Robert W. Hirth (RH 2526)
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants Newsday, Inc., Hoy, LLC,
DSA Community Publishing, LLC, f/k/a United Media
Distribributors, LLC, Distribution Systems of America,
Inc., Harold Foley, and Thomas Langer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CRAB HOUSE OF DOUGLASTON INC. d/b/a
DOUGLASTON MANOR, COLLEGE POINT
RESTAURANT, CORP. d/b/a GALLAGHER'S II, RON
BON PUB, INC. d/b/a GALLAGHER'S, ET WEEK
PUBLICATION, INC., GREENBERG & STEIN, LLP
JOSEPH MAURO, PARALLEL PRODUCTIONS, INC.,
PARK AVENUE AESTHETIC SURGERY, PC,
SCOTT A . RUSSO, and TAC CATERING, INC.,
ON BEHALF OF THEMSELVES AND ALL
SIMILARLY SITUATED PERSONS AND ENTITIES

                    Plaintiffs,

     - against -

NEWSDAY, INC., HOY, LLC, UNITED MEDIA
DISTRIBUTORS, LLC, DISTRIBUTION SYSTEMS
OF AMERICA, INC., HAROLD FOLEY, ROBERT
GARCIA, THOMAS LANGER, ROBERT HAUFMAN,
FRED HERB, ROBERT BRENNAN, LOUIS S. SITO
KEITH POTTHOFF and "JOHN DOES" "1" THROUGH
"25",

                    Defendants.

-------------------------------------------------------------------X

No. CV 04 558
(DRH)(WDW)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS SECOND AMENDED COMPLAINT

## Table of Contents

Page

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 5

I.   THE SECOND AMENDED COMPLAINT DOES NOT STATE A
     SECTION 1962(C) RICO CLAIM ................................................................. 6

     A.   Count Three Fails To State A Section 1962(c) Claim Because
          It Does Not Allege A Cognizable RICO Enterprise ........................... 6

     B.   Count One Fails To State A Section 1962(c) RICO Claim
          Against Either Foley or Langer ......................................................... 11

          1.   The Second Amended Complaint Fails to Allege that
               either Foley or Langer "Conducted" the Affairs of the
               Purported Enterprises ............................................................. 11

          2.   The Second Amended Complaint Fails to Allege that
               Foley or Langer Committed Predicate Acts of
               "Racketeering Activity" .......................................................... 13

II.  THE SECOND AMENDED COMPLAINT DOES NOT STATE A
     SECTION 1962(D) RICO CLAIM ............................................................... 17

     A.   Plaintiffs' Failure To State A Substantive RICO Claim
          Requires Dismissal Of The RICO Conspiracy Claims .................... 17

     B.   Plaintiffs Have Not Sufficiently Pled A RICO Conspiracy ............. 19

III. PLAINTIFFS HAVE NOT STATED A LANHAM ACT CLAIM ........... 20

IV.  THE COURT SHOULD DECLINE TO EXERCISE
     SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE
     LAW CLAIMS ............................................................................................. 24

V.   ALTERNATIVELY, THE COURT SHOULD DISMISS CERTAIN
     OF PLAINTIFFS' STATE LAW CLAIMS FOR FAILURE TO
     STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .......... 25

## Table of Contents
(continued)

Page

| | | |
|---|---|---|
| A. | The Second Amended Complaint Does Not State A Claim For Conversion Against Any Defendant........................................... | 25 |
| B. | The Second Amended Complaint Does Not State A Claim For Unjust Enrichment Against Defendant United........................... | 26 |
| C. | The Second Amended Complaint Does Not State A Claim For Common Law Fraud Against United, Foley or Langer ........... | 27 |
| D. | The Second Amended Complaint Does Not State A Claim Under New York's General Business Law Against Any Defendant........................................................................................ | 29 |

CONCLUSION ................................................................................................................ 32

## TABLE OF AUTHORITIES

### CASES

Page

Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629 (E.D.N.Y. 2003) . 29, 30

Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85 (2d Cir. 1999) ....................... 7, 8

Andre Strishak & Assocs., P.C. v. Hewlett Packard Co., 300 A.D. 2d. 608,
    752 N.Y.S. 2d 400 (2d Dep't 2002) ................................................................. 30, 31

Bader v. Siegel, 238 A.D.2d 272, 657 N.Y.S. 2d 28 (1st Dep't 1997) ............................. 32

Banco Espirito Santo De Investimento, S.A., v. Citibank, N.A., 03 Civ. 1537 (MBM),
    2003 WL 23018888, (S.D.N.Y. Dec. 22, 2003) ................................................... 28

Berni v. Int'l Gourmet Restaurants of America, Inc., 838 F.2d 642 (2d Cir. 1988) ........ 24

Casio Computer Co., Ltd. v. Sayo, No. 98 Civ. 3772, 2000 WL 1877516
    (S.D.N.Y. Oct. 13, 2000) ...................................................................................... 21

Cruz v. NYNEX Info. Res., 263 A.D. 2d 285, 703 N.Y.S. 2d 103
    (1st Dep't 2000) ............................................................................................... 31, 32

Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 02 Civ. 2561,
    2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003) ................................................. 7, 15

Discon, Inc. v. NYNEX Corp., 93 F.3d 1055 (2d Cir. 1996), vacated on other grounds,
    525 U.S. 128 (1998) .............................................................................................. 8

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994) ..................... 6

Garelick v. Carmel, 141 A.D.2d 501, 529 N.Y.S.2d 126 (2d Dep't 1988) ..................... 29

Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C.,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003) ................................................................. 27

Goldberg v. Bell Atl., No. 99 Civ. 2889, 2000 WL 1459834 (S.D.N.Y. Sept. 29, 2000) 22

iii

Grambs v. Image Bank, Inc., No. 90 Civ. 7291, 1991 WL 84638 (S.D.N.Y. May 16,
       1991) ........................................................................................................................ 23

Henry v. Eisenberg, No. 91 Civ. 5122 (DRH), 1993 WL 86761
       (E.D.N.Y. March 10, 1993) ................................................................................. 16

High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420 (S.D.N.Y. 1998) .............................. 27

Kades v. Organic Inc., No. 00 Civ. 3671, 2003 WL 470331
       (S.D.N.Y. Feb. 24, 2003) ................................................................................. 7, 21

Kowalcyzk v. Rosenthal, No. 92-CV-4276 (DRH), 1997 WL 1113644
       (E.D.N.Y. March 31, 1997), aff'd mem., 175 F.3d 1008 (2d Cir. 1999) .............. 25

Laverpool v. New York City Transit Auth., 760 F. Supp. 1046 (E.D.N.Y. 1991) .......... 20

LeSavoy v. Lane, 304 F. Supp. 2d 520 (S.D.N.Y. 2004) .......................... 12, 14, 15, 17, 30

Licata and Co. v. Goldberg, 812 F. Supp. 403 (S.D.N.Y. 1993) ...................................... 23

Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc.,
       156 F. Supp. 2d 376 (S.D.N.Y. 2001) ............................................................ 6, 9, 11

Mark v. J.I. Racing, Inc., No. 92-CV-5285, 1997 WL 403179
       (E.D.N.Y. July 9, 1997) ........................................................................................ 20

Mathon v. Feldstein, 303 F Supp. 2d 317 (E.D.N.Y. 2004) ...................................... 15, 17

Maurizio v. Goldsmith, 230 F.3d 518 (2d Cir. 2000) ....................................................... 32

Model Imperial Supply Co., Inc. v. Westwind Cosmetics, Inc., 808 F. Supp. 943
       (E.D.N.Y. 1992) ..................................................................................................... 25

Moy v. Terranova, No. 87 CV 1578, 1999 WL 118773
       (E.D.N.Y. Mar. 2, 1999) ....................................................................................... 10

NRB Indus., Inc. v. R.A. Taylor & Assocs., Inc., No. 97 Civ. 181, 1998 WL 3638
       (S.D.N.Y. Jan 7, 1998) .......................................................................................... 19

Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514
       (S.D.N.Y. 2001) ................................................................................................ 19, 21

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
85 F. Supp. 2d 282 (S.D.N.Y. 2000) ...................................................................... 30

Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F. 3d 690 (2d Cir 1994) .............................. 23

Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990) ..................................................... 19

PDK LABS, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997) ....................................... 24

Pyke v. Tony, No. 92 Civ. 555, 1998 WL 37599 (N.D.N.Y. Jan. 26, 1998) ................... 13

R.C.M Executive Gallery Corp. v. Rols Capital Co., No. 93 Civ. 8571,
1997 WL 27059 (S.D.N.Y. Jan. 23, 1997) .............................................................. 11

Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191, 1997 WL 603496
(S.D.N.Y. Sept. 30, 1997) ....................................................................................... 12

Reprosystem, B.V. v. SCM Corp., 727 F.2d 257 (2d Cir.),
cert. denied, 469 U.S. 828 (1984) .......................................................................... 28

Reves v. Ernst & Young, 507 U.S. 170 (1993) ................................................................. 12

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339
(2d Cir. 1994) ........................................................................................................... 8

S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629 (2d Cir. 1996) ..... 15

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) ............................................ 6

Sheth v. New York Life Ins. Co., 273 A.D. 2d 72, 709 N.Y.S. 2d 74
(1st Dep't 2000) .................................................................................................. 31, 32

Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship,
380 F.3d 126 (2d Cir. 2004) .............................................................................. 23, 24

Telecom Int'l. Am., Ltd., v. AT&T Corp., 280 F. 3d 175 (2d Cir. 2001) ............ 22, 23, 25

U.S. v. Ceballos, 340 F.3d 115 (2d Cir. 2003) ................................................................. 21

Watral v. Silvernails Farms, LLC, 177 F. Supp. 2d 141 (E.D.N.Y. 2001) ........................ 6

Williams v. Dow Chem. Co., 255 F. Supp. 2d 219 (S.D.N.Y. 2003) ............................... 23

Wilson v. Toussie, 260 F. Supp. 2d 530 (E.D.N.Y 2003) ........................................... 16, 17

## STATUTES

15 U.S.C. § 1125(a) ....................................................................................................... 3, 21

18 U.S.C. § 1341 ................................................................................................................ 15

18 U.S.C. § 1961 ........................................................................................................... 2, 15

18 U.S.C. § 1962(c) (emphasis added) ...................................................................... 8, 18, 19

N.Y. Gen. Bus. Law §§ 349, 350 (McKinney's 2004) ....................................................... 30

## RULES

Fed. R. Civ. P. 9(b) ............................................................................... 4, 5, 16, 21, 28, 29

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 6

Defendants Newsday, Inc., Hoy, LLC, Distribution Systems of America, Inc. ("DSA"), DSA Community Publishing, LLC f/k/a United Media Distributors, LLC ("United") (collectively, the "Newsday Defendants"), Harold Foley ("Foley") and Thomas Langer ("Langer"), submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is a purported class action brought on behalf of all persons and entities who "placed and paid for advertisements in Newsday and Hoy and/or paid the Defendants, including DSA, for the delivery of advertising flyers to households from a time prior to or from mid-1995 to the present time." SAC ¶ 86. In sweeping, conclusory allegations, the Second Amended Complaint asserts that the defendants – four affiliated corporations that allegedly publish or distribute Newsday and Hoy, or distribute advertising flyers, and eight individual employees or agents of the corporate defendants – engaged in fraud. More specifically, plaintiffs assert that Newsday, Inc. and the other defendants fraudulently increased the reported circulation volume of Newsday and Hoy and misrepresented the circulation volume of advertising flyers, allegedly resulting in higher advertising and delivery rates paid by the plaintiffs. Id. ¶ 1-2.

The Second Amended Complaint asserts ten claims. Plaintiffs' principal claims charge defendants with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq. (2005). The Second Amended Complaint also charges Newsday, Inc. and Hoy, LLC with violating section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a) (2005). Plaintiffs further assert claims under New

York law for conversion, unjust enrichment, common law fraud and violation of New

York's General Business Law. As demonstrated below, the Second Amended Complaint

should be dismissed in its entirety as against the moving defendants. This is not a federal

RICO or "unfair competition" case. Plaintiffs, at most, plead a fraud claim as against

only the Newsday Defendants. Because plaintiffs' RICO and Lanham Act claims

provide the sole basis of federal jurisdiction, dismissal of those claims warrants dismissal

of the pendant state law claims as well.

Plaintiffs' RICO claims allege predicate acts of mail fraud and the existence

of three distinct RICO enterprises: (1) Newsday, Inc.; (2) Hoy, LLC; and (3) a purported

association-in-fact "Circulation Enterprise" consisting of the affiliated Newsday

Defendants, their employees and agents, and non-defendant Audit Bureau of Circulation

("ABC"), a not-for-profit corporation alleged to function as an independent auditor and

self-regulatory organization. The Second Amended Complaint alleges two substantitve

RICO violations: (1) Count III asserts a section 1962(c) claim against both the Newsday

Defendants and the individual defendants for purportedly conducting the affairs of the

Circulation Enterprise through a pattern of racketeering activity; and (2) Count I asserts a

section 1962(c) claim against the eight individual defendants for purportedly conducting

the affairs of the three purported enterprises through a pattern of racketeering activity.

Plaintiffs also assert three section 1962(d) RICO conspiracy claims (Counts II, IV and

V).

2

Plaintiffs' section 1962(c) claims are deficient as a matter of law. First, the purported Circulation Enterprise is not a cognizable RICO enterprise. It is well-settled that a corporate defendant cannot be liable as a RICO "person" for conducting the affairs of an association-in-fact enterprise consisting of the corporation, its affiliated corporations, and their employees and agents. Plaintiffs attempt to circumvent section 1962(c)'s "distinctness" requirement by alleging that ABC is a member of the Circulation Enterprise. There is, however, no factual allegation in the Second Amended Complaint to support a finding that ABC ever shared a "common purpose" (lawful or unlawful) or "joined together" with the Newsday Defendants to form an association-in-fact RICO enterprise; in fact, plaintiffs' allegations are directly to the contrary. Second, plaintiffs do not sufficiently allege that either Foley or Langer "conducted" the affairs of any of the purported enterprises. Finally, plaintiffs do not allege that either Foley or Langer committed two or more predicate acts and, in addition, they fail to plead the alleged predicate acts of mail fraud with particularity as required by Rule 9(b).

Plaintiffs' section 1962(d) RICO conspiracy claims are equally deficient. First, plaintiffs' failure to state a section 1962(c) claim and their failure even to assert a section 1962(a) claim requires dismissal of the claims for "conspiracy" to violate those sections. Second, the Second Amended Complaint fails to plead facts showing agreement by any defendant concerning the commission of RICO predicate acts.

Count VII of the Second Amended Complaint also fails to state a claim against Newsday or Hoy for purported "false advertising" in violation of section 43(a) of the Lanham Act. First, the Second Amended Complaint does not allege the

3

dissemination by defendants of any false "advertising" or "promotional" materials in interstate commerce, which is an essential element of a section 43(a) claim. Second, plaintiffs' allegations that they overpaid for advertising purchased from Newsday, Inc. and/or Hoy, LLC do not allege the type of "commercial or competitive injury" necessary for Lanham Act standing under well-settled precedent.

   With dismissal of plaintiffs' RICO and Lanham Act claims, the Court should decline to exercise supplemental jurisdiction over the pendant state law claims. In the event, however, that the Court chooses to exercise supplemental jurisdiction, plaintiffs' state law claims should, in substantial part, be dismissed for failure to state a claim under New York law.

   First, Count VI of the Second Amended Complaint should be dismissed in its entirety because it fails to state a claim for conversion of money under New York law. Second, plaintiffs' claim for unjust enrichment (Count VIII) should be dismissed as against defendant United because there is no allegation that United received a benefit – the allegedly higher advertising or flyer rates – at plaintiffs' expense. Third, plaintiffs' claim for common law fraud (Count IX) is deficient as against defendants United, Foley and Langer for two independent reasons: (1) the Second Amended Complaint does not allege that any of these defendants made a representation to the plaintiffs as required by New York law; and (2) the Second Amended Complaint does not plead fraud with particularity as required by Rule 9(b). Finally, plaintiffs' claims under sections 349 and 350 of the New York General Business Law (Count X) should be dismissed because

plaintiffs do not – and cannot – allege that the purported misconduct was directed at consumers and, with respect to section 350, do not allege any deceptive advertisements.

## ARGUMENT

A motion to dismiss pursuant to Rule 12(b)(6) should be granted where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" Watral v. Silvernails Farms, LLC, 177 F. Supp. 2d 141, 147 (E.D.N.Y. 2001) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While the Court must accept as true the factual allegations in the Second Amended Complaint and draw reasonable inferences in favor of the non-moving party in evaluating the motion, it is not required to accept as true mere "conclusions of law or unwarranted deductions." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

Moreover, "[b]ecause the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001) (internal quotations and citations omitted); see also Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.").

# I.   THE SECOND AMENDED COMPLAINT DOES NOT STATE A SECTION 1962(C) RICO CLAIM

In order to state a civil RICO claim under section 1962(c), "a plaintiff must plead '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,'" and "injury to business or property as a result of the RICO violation." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (citations omitted). "If the Plaintiffs fail to plead sufficiently each of the elements of a civil RICO claim, they fail to state a claim." Kades v. Organic Inc., No. 00 Civ. 3671, 2003 WL 470331, at *8 (S.D.N.Y. Feb. 24, 2003). In addition, the "'requirements of section 1962(c) must be established as to each individual defendant.'" Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 02 Civ. 2561, 2003 WL 22227956, at *10 (S.D.N.Y. Sept. 26, 2003) (citations omitted).

## A.   Count Three Fails To State A Section 1962(c) Claim Because It Does Not Allege A Cognizable RICO Enterprise

Count III is asserted against the Newsday Defendants as well as the eight individual defendants, and involves only the purported association-in-fact "Circulation Enterprise." SAC ¶¶ 232-238. As an initial matter, the claim in Count III asserted against the Newsday Defendants should be dismissed because Count III in fact alleges only that the individual defendants – not the Newsday Defendants – were "associated with" and "managed" the affairs of the purported Circulation Enterprise. Id. ¶ 237. In any event, as shown below, Count III should be dismissed in its entirety because the so-called "Circulation Enterprise" is not a cognizable RICO enterprise.

6

In their original complaint, plaintiffs alleged that all of the defendants conducted the affairs of an association-in-fact enterprise consisting of all of the defendants. Comp. ¶¶ 71 and 77. This failed to state a section 1962(c) claim against the Newsday Defendants because, as the Second Circuit has made clear, a corporate defendant cannot be liable for conducting the affairs of an "association-in-fact enterprise" consisting of the corporation, its affiliated corporations, and their employees and agents. Because section 1962(c) makes it unlawful "for any person *employed by or associated with* any enterprise" to conduct "such enterprise's affairs through a pattern of racketeering activity" (18 U.S.C. § 1962(c) (emphasis added)), it is well settled that "the person and the enterprise referred to must be distinct," Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343-44 (2d Cir. 1994). "Plaintiffs cannot circumvent the distinctness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" Anatian, 193 F.3d at 89 (quoting Riverwoods, 30 F.3d at 344) (emphasis added). Nor may plaintiffs circumvent the "distinctness" requirement by alleging that the corporate "person" conducted the affairs of an "association-in-fact enterprise" consisting of the corporation, its affiliated corporations, and their employees or agents. See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063-64 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998).

By way of background, plaintiffs allege that defendants Newsday, Inc., Hoy, LLC and DSA are wholly-owned subsidiaries of the Tribune Company that publish and/or distribute Newsday, Hoy or advertising flyers (SAC ¶¶ 65-66 and 68); and that

7

defendant United is a DSA subsidiary that engaged in the distribution of Newsday (id. ¶ 67). DSA and United (and predecessor entities) are defined in the Second Amended Complaint as the "Distributor." Id. ¶ 5. All of the individuals named as defendants are alleged to have acted as employees or agents of Newsday, Inc., Hoy, LLC, or the Distributor. Id. ¶¶ 70-78. Plaintiffs also identify non-defendants Michael Pouchie and Randy Green as the Distributor's former officer and former employee, respectively. Id. ¶¶ 82-83.

In an effort to avoid dismissal of the section 1962(c) claims against the Newsday Defendants, plaintiffs have now included ABC in the purported Circulation Enterprise that otherwise consists of the affiliated corporate defendants and their employees and agents. See SAC ¶¶ 5, 181 and 185-90. This transparent pleading artifice should be rejected.

Although the Second Amended Complaint asserts that "the Circulation Enterprise constitutes an Enterprise within the meaning of 18 U.S.C. §§ 1961(4)" (SAC ¶ 242), "[t]he definition of an enterprise … is not without limits," Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001). At a minimum, "[a]n enterprise must be a group of persons associated together for a common purpose of engaging in a course of conduct.'" Id. (quoting U.S. v. Turkette, 452 U.S. 576, 583 (1981)). Accordingly, "conclusory 'naming of a string of entities' does not adequately allege an enterprise," and failure to "allege that the group's participants shared a common purpose" compels dismissal of a section

8

1962(c) RICO claim. Moy v. Terranova, No. 87 CV 1578, 1999 WL 118773, at *5

(E.D.N.Y. Mar. 2, 1999).

Here, the so-called "Circulation Enterprise" does not satisfy the

requirement that the members of the purported "association in fact" share a "common

purpose." Indeed, on the one hand, the "lawful purpose" of the "Circulation Enterprise"

allegedly was

> and continue[s] to be, the legitimate business of planning,
> developing, marketing, selling, distributing and managing the
> circulation of Newsday and Hoy and the delivery of flyers
> including, without limitation, news reports, editing,
> designing, printing, creating advertisements, distributing,
> creating computer services and other services related to the
> publication of a newspaper and direct delivery of advertising
> flyers to households.

SAC ¶ 182. Yet, on the other hand, the "enterprise" purportedly includes not only the

Newsday Defendants, the individual defendants, and other agents of the Newsday

Defendants engaged in the distribution of newspapers and advertising flyers (id. ¶ 186),

but also includes ABC (id. ¶ 181). Plaintiffs do not – and cannot – allege that ABC

shared the "lawful purpose" of "marketing," "selling," "distributing," and "managing the

circulation" of Newsday and Hoy or engaging in the "direct delivery of advertising flyers

to households." On the contrary, ABC is alleged to be "an independent auditing

company and self-regulatory auditing organization engaged by and responsible to

advertisers, advertising agencies and the media they employ, and various newspaper and

magazine publishers throughout the United States, for the independent verification and

dissemination of its members' circulation." Id. ¶ 95 (emphasis added). Plainly, ABC, as

9

an independent, "self-regulatory organization" did not share the "lawful purpose" of running the business operations of the Newsday Defendants, and thus was not a "member" of such an "enterprise." See, e.g., Manhattan Telecommunications, 156 F. Supp. 2d at 382 ("the alleged purpose of the enterprise underscores that it is a fiction created by plaintiff to circumvent the distinctness requirement").

Nor does the Second Amended Complaint allege that ABC and the other defendants associated together for the "unlawful" purpose of allegedly inflating the reported circulation volume of Newsday and Hoy. On the contrary, plaintiffs allege that ABC was a "targeted victim[] of the Circulation Enterprise." SAC ¶ 184. As a matter of law, ABC cannot have been a member of an association-in-fact enterprise whose purpose was to victimize it. See R.C.M Executive Gallery Corp. v. Rols Capital Co., No. 93 Civ. 8571, 1997 WL 27059, at *8 n.8 (S.D.N.Y. Jan. 23, 1997) ("The allegation that [company and its president] were part of an associated-in-fact enterprise to defraud themselves is a transparent conclusory allegation that the Court is not bound to accept even on a motion to dismiss."). Accordingly, the Second Amended Complaint does not allege a cognizable "Circulation Enterprise" and Count III should be dismissed in its entirety. See, e.g., Moy, 1999 WL 118773, at *5.[1]

---

[1] In addition, as shown below, Count III should be dismissed as against Foley and Langer for the independent reasons that plaintiffs do not sufficiently allege that these individuals conducted the affairs of the purported Circulation Enterprise or that they committed two or more predicate acts of mail fraud.

**B.    Count One Fails To State A Section 1962(c) RICO Claim Against Either Foley or Langer**

Count I of the Second Amended Complaint asserts a section 1962(c) claim against each of the individual defendants (SAC ¶¶ 220-27), alleging in conclusory terms that "each of the Individual Defendants" was "associated with" and "managed, operated and/or participated" in the affairs of three distinct enterprises:  (1) Newsday, Inc.; (2) Hoy, LLC; and (3) a purported association-in-fact "Circulation Enterprise" (id. ¶¶ 226).  As an initial matter, the claim asserted against Foley and Langer for conducting the affairs of the purported Circulation Enterprise should be dismissed for the reasons discussed above with respect to Count III.  In any event, as demonstrated below, Count I should be dismissed as against Foley and Langer in its entirety for two independent reasons.

**1.    The Second Amended Complaint Fails to Allege that either Foley or Langer "Conducted" the Affairs of the Purported Enterprises**

In order to satisfy the "conduct" element of a section 1962(c) claim, "a plaintiff must plead each defendant's participation in the 'operation or management' of an enterprise." LeSavoy v. Lane, 304 F. Supp. 2d 520, 534 (S.D.N.Y. 2004) (citations omitted); see also Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (the defendant must have "*some* part in directing the enterprise's affairs" (emphasis in original).  Thus, "liability under § 1962(c) 'may not be imposed on one who merely "carries on" or "participates" in an enterprise's affairs.'" Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191, 1997 WL 603496, at * 4 (S.D.N.Y. Sept. 30, 1997) (quoting Biofeedtrac, Inc. v.

11

Kolinor Optical Enters. & Consultants, S.R.L., 832 F. Supp. 585, 590-91 (E.D.N.Y. 1993)).  Nor is it sufficient to allege that a defendant engaged in wrongful conduct that assists the enterprise.  See Pyke v. Tony, No. 92 Civ. 555, 1998 WL 37599, at *8 (N.D.N.Y. Jan. 26, 1998).

With respect to defendants Foley and Langer, the Second Amended Complaint contains conclusory language reciting that "Garcia, Langer, Ha[l]fman[n], Herb, and Potthoff … function in the Circulation Enterprise by providing overall leadership, management and supervision…" (id. ¶ 189) and that "[e]ach of the Individual Defendants was, and continues to be, associated with the Circulation Enterprise and Company Defendants Newsday and Hoy, and managed, operated and/or participated, directly or indirectly, in the affairs of these Enterprises…" (id. ¶ 224).  Broad and "'sweeping allegations' that in a general fashion a defendant 'operated, managed and participated in the operation and management of' the enterprise do not support a section 1962(c) claim."  Pyke, 1998 WL 37599, at *8 (citation omitted).  The Second Amended Complaint is devoid of factual allegations sufficient to demonstrate that either Foley or Langer conducted the affairs of the purported enterprises.

The Second Amended Complaint identifies defendant Foley as a "computer programmer and an independent contractor" for the Distributor who allegedly "created the Distributor's computer programs which were used for and during the distribution of Newsday and Hoy."  SAC ¶ 70.  The only factual allegations made against Foley are that, prior to or "in or about late 1995 or early 1996," he created computer programs that "w[ere] used by" the "Defendants to alter the Distributor's reports and weekly

12

affidavits...." Id. ¶ 117; see also id. ¶ 108. Defendant Langer is identified as the former "chief financial officer of Defendant United." SAC ¶¶ 72. The only conduct specifically attributed to Langer in the Second Amended Complaint is that he allegedly told Pouchie that "it was 'better for [Pouchie] to cooperate' with Defendants Newsday and Hoy by continuing to inflate the circulation volume." Id. ¶ 139.[2]

Plaintiffs' allegations do not demonstrate that either Foley or Langer "had a role in managing or directing" the affairs of the purported RICO enterprises. Redtail Leasing, 1997 WL 603496, at *5. In short, with respect to Foley and Langer, the Second Amended Complaint's factual allegations plead, at most, only the "'[p]erformance of tasks that are "necessary or helpful" to the enterprise'" – which is insufficient to state a section 1962(c) RICO claim against these individuals. See, e.g., LeSavoy, 304 F. Supp.2d 520 at 534 (quoting United States v. Viola, 35 F.3d 37, 40-41 (2d Cir. 1994)); Redtail Leasing, 1997 WL 603496, at *5 (even alleging "wrongful conduct that assists the enterprise" is insufficient to plead a defendant's part in "direct[ing]" it).

### 2. The Second Amended Complaint Fails to Allege that Foley or Langer Committed Predicate Acts of "Racketeering Activity"

In order to state a claim, "a complaint under §1962(c) must charge [a] named defendant with engaging in specific racketeering acts, constituting a pattern within

---

[2] The conclusory allegation in paragraph 119 of the Second Amended Complaint that "Green was systematically directed every few weeks by Defendant Garcia or Defendants Langer, Ha[lfmann], Herb, and Brennan to falsely inflate Newsday sales figures for the Saturday and Sunday Newsday newspapers" simply lumps multiple defendants together in vague terms, and therefore does not attribute any purportedly "fraudulent" conduct to any specific Individual Defendant (see infra, Part I B 2).

the meaning of the statute, committed by that defendant in the course of conducting the affairs of the enterprise." Zito v. Leasecomm Corp., No. 02 Civ. 8074, 2003 WL 22251352, at *10 (S.D.N.Y. Sept. 30, 2003). In particular, "to state a violation of § 1962(c) by any defendant, plaintiffs must allege that that defendant personally committed two or more predicate acts," as defined in 18 U.S.C. § 1961(1). Id. at *13. As demonstrated below, the Second Amended Complaint does not sufficiently allege that either Foley or Langer committed such acts, let alone a pattern of them.

The Second Amended Complaint purports to allege RICO predicate acts of mail fraud in violation of 18 U.S.C. 1341. E.g., SAC ¶¶ 205, 211. The elements of mail fraud are "(1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails … in furtherance of the scheme." S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996). The "crux of mail fraud" is "'an intent to defraud.'" Mathon v. Feldstein, 303 F Supp. 2d 317, 323 (E.D.N.Y. 2004) (citations omitted). In addition, "[t]o establish an intent to defraud, the plaintiffs must adequately allege that the 'defendants contemplated some actual harm or injury to their victims.'" Id. (citation omitted).

Moreover, it is well settled that allegations of mail fraud "must be pled with particularity" under Federal Rule of Civil Procedure 9(b). LeSavoy, 304 F. Supp. 2d. at 532. As this Court has explained, to state a civil RICO claim alleging predicate acts of mail fraud,

> the plaintiff must plead with particularity "the allegedly
> fraudulent statements themselves," ... how each of these
> items was false and misleading, ... the time, place and
> speaker of the alleged misrepresentations, ... and the "factual
> circumstances giving rise to a strong inference of the requisite
> fraudulent intent." ... Finally, when multiple defendants are
> involved in the alleged fraud, "the complaint should inform
> each defendant of the nature of his alleged participation in the
> fraud."

Henry v. Eisenberg, No. 91 Civ. 5122 (DRH), 1993 WL 86761, at *3 (E.D.N.Y. March

10, 1993) (Hurley, J.) (citations omitted). This Court also has held that, "in civil RICO

actions, 'the concerns that dictate that fraud be pleaded with particularity exist with even

greater urgency.'" Wilson v. Toussie, 260 F. Supp. 2d 530, 537 (E.D.N.Y 2003) (Hurley

J.) (citations omitted).

The Second Amended Complaint does not comply with the requirements of

Rule 9(b). While each plaintiff asserts that it has been injured by purportedly "fraudulent

representations to the Representative Plaintiffs and Class members as to the circulation

volume" of Newsday and Hoy (see SAC ¶ 7), the Second Amended Complaint fails to

identify even a single specific instance of any such false representation, at any time, to

any plaintiff, by Foley or Langer. Indeed, neither defendant is even identified as ever

having made a fraudulent statement to any plaintiff. Instead, the Second Amended

Complaint repeatedly makes general assertions that purportedly false representations

were made by "defendants," "Defendants Newsday's and Hoy's agents or sales

representatives," or "DSA's agents or sales representatives." SAC ¶¶ 17-19, 23-24, 28,

33, 38. Such broad-brush and conclusory allegations are insufficient to allege that any

particular defendant participated in any predicate act of mail fraud under Rule 9(b),

which "is not satisfied by a complaint in which 'defendants are clumped together in vague allegations.'" Wilson, 260 F. Supp. 2d at 537 (citations omitted); see also LeSavoy, 304 F. Supp. 2d at 530. As the court in Zito aptly stated,

> Plaintiffs fail to comprehend that in making allegations under RICO, they are charging the defendants with having committed serious criminal offenses. It is not enough to allege that predicate acts were committed by somebody, in furtherance of an enterprise in which the defendants were involved.

2003 WL 22251352, at *13. Indeed, the courts have repeatedly dismissed RICO claims based upon conclusory allegations of fraud against multiple defendants.[3]

      In addition, the allegations in the Second Amended Complaint also fail to establish a "strong inference" that either Foley or Langer acted with the requisite fraudulent intent to harm plaintiffs. The Second Amended Complaint's conclusory allegation that the purported "fraudulent representations to the Representative Plaintiffs and Class members" were "made recklessly without regard to the truth or falsity of the representations" (SAC ¶ 7) is insufficient, because neither Foley nor Langer is alleged to have made such representations, or even to have had contact with the plaintiffs or any class member. Indeed, although the Second Amended Complaint alleges that defendant

---

[3] See, e.g., LaSavoy, 304 F. Supp. 2d at 533 (rejecting "blanket allegations that all members of the purported enterprise collectively and individually committed at least two" predicate acts). Mathon, 303 F. Supp. 2d at 322-23 (allegations of wire fraud were insufficient because "plaintiff fail[ed] to identify the dates that these alleged conversations took place, where the phone calls took place and that during these phone calls, the defendants knowingly made false representations to the plaintiff"); Kades, 2003 WL 470331, at * 9 (rejecting "[p]laintiffs' generalized and conclusory allegations of mail fraud").

Foley "originally" designed Newsday "computer programs" that allegedly were manipulated, plaintiffs do not allege that Foley participated in any manipulation of those programs. See id. ¶¶ 108, 117. Similarly, the Second Amended Complaint is devoid of specific factual allegations that defendant Langer participated in any allegedly fraudulent activity.

## II.    THE SECOND AMENDED COMPLAINT DOES NOT STATE A SECTION 1962(D) RICO CLAIM

The Second Amended Complaint asserts three claims under section 1962(d), which prohibits any person from conspiring to violate any of the substantive provisions of section 1962(a)-(c). See 18 U.S.C. § 1962(d). Count II of the Second Amended Complaint alleges that each of the individual defendants conspired to violate section 1962(c) with regard to the conduct of the purported "Newsday," "Hoy" and "Circulation" enterprises. SAC ¶ 228-31. Count IV alleges that all of the defendants conspired to violate section 1962(c) with regard to the conduct of the purported "Circulation Enterprise." Id. ¶ 243. Count V alleges that all of the defendants conspired to violate Section 1962(a) with regard to the purported "Newsday," "Hoy" and "Circulation" enterprises. Id. ¶ 249. As shown below, the RICO conspiracy claims should be dismissed for two independent reasons.

### A.    Plaintiffs' Failure To State A Substantive RICO Claim Requires Dismissal Of The RICO Conspiracy Claims

Plaintiffs' section 1962(d) RICO conspiracy claims are deficient because the Second Amended Complaint does not state a claim under the corresponding substantive provisions of RICO. See R.C.M., 1997 WL 27059, at *10 ("The plaintiffs' §

17

1962(d) claim is also deficient in view of the dismissal for legal insufficiency of the plaintiffs' claims under §§ 1962(a) and (c)."). As demonstrated above, the Second Amended Complaint does not state a claim under section 1962(c). Accordingly, Counts II and IV of the Second Amended Complaint for "conspiracy" to violate Section 1962(c) should be dismissed. See, e.g., Henry, 1993 WL 86761, at *3 (holding that section 1962(d) RICO claim in "Count II must likewise be dismissed, since it merely alleges an agreement to carry out the activities referred to in Count One," that failed to state a section 1962(c) claim); Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) (where plaintiffs have "not asserted facts sufficient to plead a claim under Section 1962(c), [their] claim under Section 1962(d) must also be dismissed").

Count V of the Second Amended Complaint alleges a conspiracy to violate Section 1962(a). SAC ¶ 249. "[A] violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering." Ouaknine v. MacFarlane, 897 F.2d 75, 82 (2d Cir. 1990). Rather, "a plaintiff suing under § 1962(a) must 'allege a "use or investment injury" that is distinct from the injuries resulting from predicate acts.'" NRB Indus., Inc. v. R.A. Taylor & Assocs., Inc., No. 97 Civ. 181, 1998 WL 3638, at *1 (S.D.N.Y. Jan 7, 1998) (citations omitted). The Second Amended Complaint is devoid of allegations that plaintiffs have suffered an "investment injury" distinct from the purported predicate acts of mail fraud. Indeed, plaintiffs do not even assert a section 1962(a) claim against any defendant. Thus,

18

Count V of the Second Amended Complaint for "conspiracy" to violate section 1962(a) should be dismissed. See Mark v. J.I. Racing, Inc., No. 92-CV-5285, 1997 WL 403179, at *5 (E.D.N.Y. July 9, 1997) (failure to allege substantive violation of Section 1962(a) required dismissal of the "§ 1962(d) conspiracy claim[] which correspond[ed] to the § 1962(a)" claim).

### B.    Plaintiffs Have Not Sufficiently Pled A RICO Conspiracy

Even if the Second Amended Complaint stated a section 1962(a) or (c) claim – which it does not – the section 1962(d) claims should be dismissed because plaintiffs do not plead facts showing the existence of a RICO conspiracy or showing that any one of the moving defendants agreed that RICO predicate acts would be committed. It is well settled that "[b]are or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud." Laverpool v. New York City Transit Auth., 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991). See also Henry, 1993 WL 86761, at *3 (dismissing claim where "the Amended Complaint lacks a single factual allegation regarding whether an agreement was reached").

The Second Amended Complaint contains only vague and general allegations that "Defendants at all relevant times in connection with the activities giving rise to th[ese] claim[s] conspired with each other and with others unknown to engage in the various activities set forth herein…as prohibited by 18 U.S.C. § 1962(d)." See e.g. SAC ¶ 203. Moreover, the sweeping, jumbled allegations in paragraph 133 of the Second

19

Amended Complaint that,"[f]rom time to time," the Defendants "Langer, Garcia, Herb and Potthoff would individually and/or with one or more of them meet on a regular bimonthly basis with Green and/or Pouchie" and that "[d]uring such meetings Defendants Garcia, Herb and Potthoff would say to Green and Pouchie that Defendant Brennan and Defendant Sito had directed them to instruct Pouchie and Green to falsify the Newsday sales reports," not only fail to plead fraudulent conduct by any of these individual defendants with the particularity required by Rule 9(b), but also fail to plead that any of them joined a conspiracy to violate RICO "with the affirmative intent to make the conspiracy succeed." See U.S. v. Ceballos, 340 F.3d 115, 123-24 (2d Cir. 2003). The Second Amended Complaint is "devoid of factual assertions concerning the existence and nature of an agreement and unspecific as to the participants therein," and thus fails "to state a claim under Section 1962(d)." Nasik, 165 F. Supp. 2d at 541 (citation omitted).[4]

## III.   PLAINTIFFS HAVE NOT STATED A LANHAM ACT CLAIM

Count VII of the Second Amended Complaint asserts a claim against Newsday, Inc. and Hoy, LLC for purported "unfair competition" in violation section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). SAC ¶¶ 255-259. "Section 43(a) of the

---

[4] See also Casio Computer Co., Ltd. v. Sayo, No. 98 Civ. 3772, 2000 WL 1877516, at *23 (S.D.N.Y. Oct. 13, 2000) (section 1962(d) claim dismissed where plaintiff "fails to allege adequate facts to bolster its conspiracy claim, and does not plead facts necessary to indicate that defendants, by their words or actions, had a conscious agreement to commit predicate acts in furtherance of the common goal of the enterprise"); Allen v. New World Coffee, Inc., No. 00 Civ. 2610, 2001 WL 293683, at *9 (S.D.N.Y. March 27, 2001) (the "Section 1962(d) claim must be dismissed because plaintiffs' pleadings fail to provide specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy").

Lanham Act provides two bases for liability: (i) false representations concerning the origin, association, or endorsement of goods or services through wrongful use of another's distinctive mark or other device ('false association'), and (ii) false representations in advertising concerning the qualities of goods and services ('false advertising')." Telecom Int'l. Am., Ltd., v. AT&T Corp., 280 F. 3d 175, 196-97 (2d Cir. 2001). Here, plaintiffs apparently intend to rely on the "false advertising" prong of section 43(a) (SAC ¶¶ 256, 259). Their conclusory allegations of "false and misleading" "descriptions" of Newsday and Hoy circulation volumes allegedly made to plaintiffs fail to state a claim, however, for two independent reasons.

First, "[f]or the Lanham Act to apply, 'the questioned advertising or statements, and not merely the underlying commercial activity, must be disseminated in [interstate] commerce -- *i.e.*, [they must] not be purely local.'" Goldberg v. Bell Atl., No. 99 Civ. 2889, 2000 WL 1459834, at *4 (S.D.N.Y. Sept. 29, 2000) (quoting Licata and Co. v. Goldberg, 812 F. Supp. 403, 409 (S.D.N.Y. 1993)). Here, as in the Goldberg case, "the complaint does not allege that the statements were disseminated in interstate commerce, and all of the factual allegations suggest that the statements were . . . 'purely local.'" 2000 WL 1459834, at *4. Indeed, all of the plaintiffs allegedly are New York corporations or partnerships operating in the state or residents of New York operating such businesses. SAC ¶¶ 15, 20, 25, 30, 35, 40, 45, 50, 55, 60. Accordingly, the allegation that defendants sent plaintiffs materials concerning circulation volume "through the United States Post Office" (id. ¶ 199) does not satisfy section 43(a)'s

21

interstate commerce requirement. See Goldberg, 2000 WL 1459834, at *4; Licata, 812 F. Supp. at 409.

Second, plaintiffs have no standing to sue under section 43(a). "In order to establish standing to sue under this statute, a plaintiff must demonstrate a 'reasonable interest to be protected' against the advertiser's false or misleading claims . . ., and a 'reasonable basis' for believing that this interest is likely to be damaged by the false or misleading advertising." Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F. 3d 690, 694 (2d Cir 1994) (citations omitted). "Where a plaintiff has failed to allege a present commercial interest to be protected, the Second Circuit has affirmed the district court's dismissal of a § 43(a) claim for lack of standing." Grambs v. Image Bank, Inc., No. 90 Civ. 7291, 1991 WL 84638, at *2 (S.D.N.Y. May 16, 1991) (citing Berni v. Int'l Gourmet Restaurants of America, Inc., 838 F.2d 642, 648 (2d Cir. 1988).

Typically, section 43(a)'s standing requirement is satisfied by commercial plaintiffs that compete directly with the defendant in the sale of goods or services. Compare Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, 380 F.3d 126, 130 (2d Cir. 2004) (finding Lanham Act standing because "the parties are direct competitors") with Telecom International, 280 F.3d at 197 (denying standing because parties were not competitors and plaintiffs failed to show "competitive injury"); see also Williams v. Dow Chem. Co., 255 F. Supp. 2d 219, 227-28 (S.D.N.Y. 2003) (Rule 12(c) dismissal of Section 43(a) claim for lack of standing). Indeed, although the Second Circuit has not required that the plaintiff be "a direct competitor" of the defendant to have standing, it has required "the potential for [plaintiff to suffer] a commercial or

competitive injury," from the false advertising, Berni, 838 F.2d at 648, and demanded "a more substantial showing [of likely injury] where the plaintiff's products are not obviously in competition with the defendant's products, or the defendant's advertisements do not draw direct comparisons between the two," Meridien, 380 F.3d at 130 (citing Ortho, 32 F.3d at 694). Thus, unless the plaintiff can show that it has a financial interest in, or connection to, a product which would be adversely affected by defendant's advertising, it lacks standing to sue under the Lanham Act. See, e.g., PDK LABS, Inc. v. Friedlander, 103 F.3d 1105, 1112 (2d Cir. 1997) ("A plaintiff must submit specific evidence that the defendant's advertising causes direct harm to the product in which the plaintiff claims a pecuniary interest."); Grambs, 1991 WL 84638, at *3 (dismissing claim where allegations demonstrated that "plaintiff has no present commercial interest in the [product] sufficient to provide her with standing to bring this action under § 43(a)").

Here, plaintiffs' section 43(a) claim is fatally deficient because the Second Amended Complaint does not allege -- nor could it -- that plaintiffs have a "pecuniary," "commercial," or "competitive" interest in a product or service that has been or would be adversely affected by Newsday and Hoy's purportedly "false advertising" concerning its circulation volume. Far from competing with Newsday or Hoy, plaintiffs allegedly operate(d), *inter alia*, restaurants, a medical practice, legal practices, and a musical instrument repair shop. Nor does any plaintiff allegedly have a "pecuniary interest" in the sale of any product that does compete with Newsday or Hoy. Rather, plaintiffs allege that they overpaid for advertising that they purchased from Newsday and/or Hoy. That

23

purported injury, as demonstrated above, is insufficient to give plaintiffs standing to sue under section 43(a). See, e.g., Telecom International, 280 F.3d at 197.

In Telecom International, plaintiff was a commercial reseller of defendant AT&T's telephone service that alleged harm from AT&T's purportedly fraudulent representations and "false advertising" concerning service and equipment that plaintiff had purchased from AT&T. Finding that plaintiff was allegedly harmed in its capacity as a customer, not a competitor of AT&T, the Second Circuit held that plaintiff lacked standing because it could not show "competitive" injury from the false advertising. Id.; see also Model Imperial Supply Co., Inc. v. Westwind Cosmetics, Inc., 808 F. Supp. 943, 945 (E.D.N.Y. 1992) (plaintiff that purchased allegedly counterfeit product for commercial resale to retailers had "no reasonable interest" to protect and thus "lack[ed] standing under § 43(a)."). Accordingly, Count VII of the Second Amended Complaint should be dismissed.

## IV. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Because plaintiffs' RICO and Lanham Act claims provide the sole basis of federal jurisdiction, dismissal of those claims warrants dismissal of the remaining state law claims as well. It is well settled that, "[w]hen all of the federal claims are eliminated before trial ... the federal court should usually decline to exercise jurisdiction over the remaining state-law claims." Kowalcyzk v. Rosenthal, No. 92-CV-4276 (DRH), 1997 WL 1113644, at *5 (E.D.N.Y. March 31, 1997) (Hurley, J.), aff'd mem., 175 F.3d 1008 (2d Cir. 1999). The conclusion of this Court in Kowalcyzk is equally applicable here:

24

> To the extent the Complaint in the instant action asserts
> pendant state law claims, the civil RICO claims, which are
> now dismissed, formed the basis of jurisdiction for these
> claims. In the absence of any remaining federal claims, the
> Court declines to exercise pendant jurisdiction over these
> state law claims and, accordingly, these claims are hereby
> dismissed.

1997 WL 1113644, at *5.

## V.   ALTERNATIVELY, THE COURT SHOULD DISMISS CERTAIN OF PLAINTIFFS' STATE LAW CLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As discussed above, the Court should decline to exercise supplemental jurisdiction over the claims asserted under New York law. In the event, however, that the Court chooses to exercise supplemental jurisdiction, plaintiffs' state law claims should, in substantial part, be dismissed for the reasons discussed below.

### A.   The Second Amended Complaint Does Not State A Claim For Conversion Against Any Defendant

Count VI of the Second Amended Complaint asserts a conversion claim against all of the defendants, alleging that the "conduct committed by the Defendants Newsday, Hoy, United and DSA as aforesaid, constituted a wrongful conversion by them to their own use of payments made by Representative Plaintiffs...." SAC ¶ 252. More specifically, the Second Amended Complaint alleges that plaintiffs' "money" was converted. Id. ¶ 254.

As a threshold matter, the Second Amended Complaint alleges only that the Newsday Defendants converted the plaintiffs' money. SAC ¶ 252. Indeed, each of the plaintiffs alleges that it made payments only to one or more of the Newsday Defendants.

Id. at ¶ 12. Accordingly, there is no basis for asserting a conversion claim against Foley or Langer.

In any event, Count VI should be dismissed in its entirety because the allegations of the Second Amended Complaint fail to state a claim for relief under New York law. It is well established under New York law that "if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action." High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (citation omitted). "In other words, the money must be 'specifically identified and segregated.'" Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C., 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003). Thus, a conversion claim must be dismissed where, as here, the complaint refers to payments or monies and does not specifically identify the allegedly converted funds. See Global View, 288 F. Supp. 2d at 480; High View Fund, 27 F. Supp. 2d at 429.

## B. The Second Amended Complaint Does Not State A Claim For Unjust Enrichment Against Defendant United

Count VIII of the Second Amended Complaint asserts a claim for unjust enrichment against each of the Newsday Defendants alleging that "Company Defendants Newsday, Hoy, United and DSA ... have wrongfully and fraudulently received more money for advertising and for the delivery of flyers than they should have if they did not commit [the alleged] fraud." SAC ¶ 261. To state a claim under New York law, plaintiffs must allege that (1) the defendant was enriched or benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require the defendant to

26

make restitution.  See, e.g., Banco Espirito Santo De Investimento, S.A., v. Citibank,

N.A., 03 Civ. 1537 (MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003)

(citation omitted).  It is axiomatic under New York law that "a plaintiff seeking an

equitable recovery based on unjust enrichment must first show that a benefit was

conferred *upon defendant*...."  Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 263 (2d

Cir.), cert. denied, 469 U.S. 828 (1984) (emphasis added).  Here, the Second Amended

Complaint alleges that plaintiffs made payments to defendants Newsday, Inc. or Hoy,

LLC for advertising (SAC ¶ 12) or made payments to defendant DSA for the delivery of

advertising flyers (id.).  Plaintiffs have not, and cannot, allege any facts to support a

claim that United received a benefit – the allegedly higher advertising or flyer rates – at

plaintiffs' expense.  Accordingly, Count VIII fails to state a claim as against defendant

United.

### C. The Second Amended Complaint Does Not State A Claim For Common Law Fraud Against United, Foley or Langer

Plaintiffs assert a claim for common law fraud against all of the defendants

in Count IX of the Second Amended Complaint, relying on the blanket allegation that

"Defendants and each of them" made representations to plaintiffs as to "the circulation

volume of Newsday and Hoy and the flyer circulation volume."  See, e.g., SAC ¶ 264.

Such conclusory allegations do not state a claim for fraud under New York law against

any United, Foley or Langer.  In addition, plaintiffs have failed to plead fraud with

particularity as required by Rule 9(b).

The elements of a claim for fraud under New York law are that:  (1) the defendant made a material false representation; (2) the defendants intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.  See, e.g., Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 642 (E.D.N.Y. 2003).  In order to state a claim, "the complaint must set forth all of the elements of fraud including the making of material representations by the defendant to the plaintiff."  Garelick v. Carmel, 141 A.D.2d 501, 502, 529 N.Y.S.2d 126, 128 (2d Dep't 1988) (citations omitted).  The Second Amended Complaint, however, does not allege that any defendant – with the possible exception of defendants Newsday, Inc., Hoy, LLC and DSA – made a material representation to any of the plaintiffs.  Accordingly, the fraud claim should be dismissed as against United, Foley and Langer.  See, e.g., Garelick, 529 N.Y.S.2d at 128 (dismissal of fraud claim "insofar as it is asserted against defendants Carmel and Scaccio" because "plaintiff's complaint does not contain any allegation setting forth alleged material representations by the defendants Carmel and Scaccio to the plaintiff").

In addition, Count VIII should be dismissed as against United, Foley and Langer because the Second Amended Complaint fails to plead the circumstances constituting fraud with particularity as required by Rule 9(b).  See Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b):

> [T]he complaint must, "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  As such, this requires the plaintiff to identify which defendant caused each

> allegedly fraudulent statement to be spoken, written, wired or
> mailed, and to whom the communication was made; when the
> communication was made; and how it advanced the
> fraudulent scheme.

Alnwick, 281 F. Supp. 2d at 639 (citations omitted). Where, as here, "fraud is alleged

against multiple defendants, a plaintiff must plead with particularity by setting forth

separately the acts or omissions complained of by each defendant." Odyssey Re

(London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y.

2000).[5] The Second Amended Complaint does not identify any allegedly fraudulent

statements made by United, Foley or Langer. Nor does it particularize where or when

any allegedly fraudulent statements were made.

### D.   The Second Amended Complaint Does Not State A Claim Under New York's General Business Law Against Any Defendant

Count X of the Second Amended Complaint asserts claims against all of the

defendants under sections 349 and 350 of the New York General Business Law, which

prohibit deceptive business practices and false advertising, respectively. See N.Y. Gen.

Bus. Law §§ 349, 350 (McKinney's 2004). The elements of a cause of action under

section 349 of the General Business Law are: "(1) a deceptive consumer-oriented act or

practice which is misleading in a material respect, and (2) injury resulting from such act."

Andre Strishak & Assocs., P.C. v. Hewlett Packard Co., 300 A.D. 2d 608, 609, 752

N.Y.S. 2d 400, 402 (2d Dep't 2002). The elements of a section 350 "false advertising"

---

[5] See also LeSavoy, 304 F. Supp. 2d at 529 ("plaintiff is required to delineate the alleged fraudulent conduct committed by each defendant"); Alnwick, 281 F. Supp. 2d at 639 ("Rule 9(b) requires that the plaintiff allege facts specifying each defendant's

claim are "that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." Strishak, 300 A.D. 2d. at 609, 752 N.Y.S. 2d at 403. As demonstrated below, plaintiffs fail to state a claim under either section.

Under New York law, the term "consumer" denotes "an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'" Cruz v. NYNEX Info. Res., 263 A.D. 2d 285, 289, 703 N.Y.S. 2d 103, 106 (1st Dep't 2000) (citations omitted); Sheth v. New York Life Ins. Co., 273 A.D. 2d 72, 73, 709 N.Y.S. 2d 74, 75 (1st Dep't 2000) (accord). The statute's "consumer orientation" thus works to "severely limit" suits brought by businesses, restricting them to cases where "'the acts or practices have a broader impact on the consumer at large' in that they are 'directed to consumers' or 'potentially affect similarly situated consumers.'" Cruz, 263 A.D. 2d at 290, 703 N.Y.S. 2d at 107 (citation omitted).

Here, the Second Amended Complaint alleges that "each of the Representative Plaintiffs are or were engaged in a business or profession in the greater New York area and each ... paid the Defendants for advertisements for their products or services...." SAC ¶ 11 (emphasis added). Thus, plaintiffs are businesses (or professionals), not consumers. Moreover, the Second Amended Complaint makes no allegation that the allegedly "deceptive" practices were "directed to" or "affect[ed] similarly situated consumers." On the contrary, consumers are, by definition, not sellers

---

contribution to the fraud").

of products or services that purchase advertising space, and thus are not "similarly situated" to the plaintiffs here.  Accordingly, Count X does not state either a section 349 or 350 claim because the Second Amended Complaint does not – and cannot – plead "consumer-oriented" conduct.  See Cruz, 263 A.D. 2d at 291, 703 N.Y.S. 2d at 107 (businesses that purchased advertising space in Yellow Pages failed to state section 349 claim because conduct at issue was not "consumer-oriented"); Sheth, 273 A.D. 2d at 73, 709 N.Y.S. 2d at 75 (lower court erred in refusing to dismiss claim where "challenged practices were [not] directed at consumers, but ... at prospective insurance agents"); see also Maurizio v. Goldsmith, 230 F.3d 518, 521-22 (2d Cir. 2000) (holding that "Section 349 'requires a finding of conduct that is consumer-oriented'" and that "the same interpretation ...applie[s] to Section 350") (citations omitted).

Finally, plaintiffs' section 350 claim is deficient for the additional reason that the Second Amended Complaint does not allege that any misleading or deceptive statement was made in an advertisement.  See Bader v. Siegel, 238 A.D.2d 272, 657 N.Y.S. 2d 28, 29 (1st Dep't 1997) (affirming dismissal of claim because materials containing the representations "were clearly not advertisements").

31

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Second Amended

Complaint in its entirety as against the moving defendants, and grant such other relief as

the Court deems just and proper.

Dated: New York, New York
     January 19, 2005

                    Respectfully submitted,

                    SIDLEY AUSTIN BROWN & WOOD LLP

By:_____
                    Robert W. Hirth (RH 2526)
                    787 Seventh Avenue
                    New York, New York 10019
                    (212) 839-5300

                    Attorneys for Defendants Newsday, Inc., Hoy,
                    LLC, DSA Community Publishing, LLC f/k/a
                    United Media Distributors, LLC, Distribution
                    Systems of America, Inc., Harold Foley and
                    Thomas Langer